IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MELVIN TODD BURK,

    Petitioner,                           No. CIV S-08-1916 FCD DAD P

    vs.

D.K. SISTO, Warden,

    Respondent.                       FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a first amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The first amended habeas petition before the court challenges petitioner's judgment of conviction entered in the Shasta County Superior Court in 2006 for the transportation of a controlled substance in violation of California Health and Safety Code § 11379(A) and the carrying of a concealed dirk or dagger in violation of California Penal Code § 12020(A)(4). Petitioner seeks federal habeas relief on the grounds that: (1) the evidence introduced at his trial was insufficient to support his conviction for carrying a concealed dirk or dagger; and (2) his sentence of two prison terms of 25-years to life, to be served concurrently, constitutes cruel and unusual punishment.

        Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

## PROCEDURAL BACKGROUND

On June 29, 2006, a jury found petitioner guilty of possession of a controlled substance, the transportation of a controlled substance and the carrying of a concealed dirk or dagger.[1] (Notice of Lodging Documents on December 23, 2008 (Doc. No. 16), Clerk's Transcript on Appeal (CT) at 145-47.) Additionally the trial court found sentencing enhancement allegations with respect to two prior serious felony convictions to be true. (Reporter's Transcripts on Appeal (RT) at 164-65.) Following his conviction, petitioner was sentenced on July 25, 2006, to two concurrent state prison terms of twenty-five years to life. (Id. Id. at 197.)

Petitioner appealed his judgment of conviction to the California Court of Appeal for the Third Appellate District. (Resp't's Lod. Doc. 3.) On July 23, 2007, the judgment of conviction was affirmed in a reasoned opinion. (Resp't's Lod. Doc. 4.) Petitioner then filed a petition for review with the California Supreme Court. (Resp't's Lod. Doc. 5.) The California Supreme Court summarily denied that petition on September 25, 2007. (Resp't's Lod. Doc. 6.)

On September 23, 2008, petitioner filed a petition for a writ of habeas corpus in this court. (Doc. No. 5.) The undersigned dismissed that petition on October 9, 2008, with leave to file an amended petition, due to petitioner's failure to name the proper respondent. (Doc. No. 6.) Petitioner filed this first amended petition on October 28, 2008. (Doc. No. 7.) Respondent filed an answer on December 23, 2008. (Doc. No. 17.) Petitioner has not filed a traverse.

## FACTUAL BACKGROUND

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

---

[1] The trial judge dismissed petitioner's conviction for possession of a controlled substance, as that crime was "necessarily included in" his conviction for the transportation of a controlled substance. (RT at 150, 155.)

> On December 19, 2004, Police Officer Steven Morehouse was on patrol in eastern Redding when he pulled defendant over for speeding on a motorcycle. Defendant was wearing a leather jacket that covered his waist. During a record check on the motorcycle, defendant leaned forward on the bike, and Officer Morehouse noticed a sheath and a portion of the handle of a knife. After calling in backup, Officer Morehouse confiscated the knife and sheath from defendant.
>
> The knife blade was approximately eight inches long and was folded into the handle of the knife, in a similar fashion to a pocketknife. This knife was unique, however, in that the blade extended beyond the protective covering of the handle by about two inches. The sheath prevented the knife from injuring defendant when it was in his pocket; otherwise, the two inches of the blade that were not encased in the handle might stab him. Officer Morehouse attempted to unfold the knife but could not because the blade appeared to be permanently locked in the folded position. These two unique characteristics of the knife led him to believe that the knife had been modified for use as a stabbing instrument.
>
> After finding the knife, Officer Morehouse was concerned there might be other weapons inside defendant's large, gauntlet-style gloves. When he peeled back a portion of one glove, Officer Morehouse discovered a plastic baggie containing methamphetamine.

(Resp't's Lod. Doc. 4 (hereinafter Opinion) at 2-3.)

## ANALYSIS

I. <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)). A federal writ is not available for alleged error in the interpretation or application of state law. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues <u>de novo</u>. <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

/////

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003). Title 28 U.S.C. § 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is

available under § 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).  When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claims

    A. Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence introduced at his trial to support his conviction for violating California Penal Code § 12020(A)(4).  Specifically, petitioner asserts that the knife he was carrying was not a dirk or dagger as defined by California state law.  (First Am. Pet. at 4.)  Petitioner also argues that the knife "was not concealed under the definition of the law."[2]  (Id.)

The California Court of Appeal specifically rejected petitioner's argument that there was insufficient evidence to support the jury's finding that the knife petitioner was carrying was a dirk or dagger.  The court reasoned as follows:

> A person is prohibited from carrying a concealed dirk or dagger, which is defined as "a knife or other instrument with or without a hand guard *that is capable of ready use as a stabbing weapon* that may inflict great bodily injury or death.  A nonlocking folding knife, a folding knife that is not prohibited by Section 653k, [switchblade knife] or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed and locked into position."  (Pen.Code,[FN] § 12020, subds. (a)(4) & (c)(24), italics added.)
>
> FN. All further statutory references are to the Penal Code unless otherwise indicated.

---

[2] Respondent argues that this aspect of petitioner's federal habeas claim is unexhausted. Even if that were the case, an application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust available state remedies.  28 U.S.C. § 2254(b)(2).  A federal court considering a habeas petition may deny an unexhausted claim on the merits when it is perfectly clear that the claim is not "colorable."  Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005).  Here, the undersigned will recommend that federal habeas relief be denied on the merits of petitioner's claim because it is not "colorable."

5

Defendant argues that the knife he carried does not fit within the meaning of a dirk or dagger because it is a pocketknife that was closed and was not locked into position. Defendant also argues that the blade was only partially exposed. According to defendant, a strict reading of the statute requires full exposure of the blade. (See In re George W. (1998) 68 Cal.App.4th 1208, 1213-1214.)

A pocketknife that is carried with the blade retracted into the handle does not qualify as a dirk or dagger under section 12020 when the blade is not exposed. (In re George W., supra, 68 Cal.App.4th at p. 1215.) The defendant in George W. was holding a "Gerber" knife in his pocket when a police officer gave him a patdown search. (Id. at p. 1210.) This type of knife allows the blade to be folded into the handle. (Id. at pp. 1210-1211.) The George W. court found "there is no evidence in the record demonstrating or tending to suggest the blade of the folding knife in appellant's pocket was exposed and locked into position-as opposed to being closed and retracted into its handle." (Id. at p. 1215.) Therefore, the George W. court concluded that the evidence was insufficient to support a finding that the knife at issue was a dirk or dagger within the meaning of section 12020. (In re George W., at p. 1215.)

The reason for the exception in section 12020, subdivision (c)(24) was "to avoid criminalizing the carrying of knives that are not capable of ready use because they are carried in a closed, secured state." (In re Luke W. (2001) 88 Cal.App.4th 650, 656.) "[S]mall knives obviously designed to be carried in a pocket in a closed state, and which cannot be used until there have been several intervening manipulations, comport with the implied legislative intent that such knives do not fall within the definition of proscribed dirks or daggers but are a type of pocketknife." (Id. at p. 656.) The "several intervening manipulations" required to open a knife are what place it in the exception of the statute. (Ibid.) In Luke W., the defendant was carrying a device that housed a nonfolding knife. (Id. at p. 655.) When manipulated correctly, the device would eject the knife, but the manipulation required both hands. (Id. at p. 656.) Even though the blade of the knife could not retract into the handle, the court determined that this knife fell into the exception for pocketknives because it required "several intervening manipulations" and was held in a closed and secured state by the defendant. (Id. at pp. 652, 656.)

Here, unlike in Luke W. or George W., the evidence could reasonably suggest that defendant was carrying a dirk or dagger because a reasonable jury could conclude that the blade was both exposed and locked into position. While the blade was in a closed position, it still extended beyond the end of the knife handle by over two inches. Defendant always carried this knife in a sheath to prevent it from injuring him since the blade did not fold completely into the handle. The closed position of the knife left about as much

6

> blade exposed as the open position of many other pocketknives. (See People v. McClure (1979) 98 Cal.App.3d Supp. 31, 33 [holding that a "belt buckle knife" that is two and one-half to three inches long when open "is a dirk or dagger ... and when worn as intended it presents a threat to public order"].) Moreover, the statute does not require that the entire blade needs to be exposed, but instead requires that the knife is "capable of ready use as a stabbing weapon" because "the blade of the knife is exposed and locked into position." (§ 12020, subd. (c)(24).) Here, the two inches of the knife blade that were exposed rendered the knife capable of ready use as a stabbing weapon regardless of the fact that the remainder of the blade was not exposed.
>
> A reasonable jury could also find that the blade of this knife was locked into position given that Officer Morehouse could not unfold the blade into an open position. Officer Morehouse also testified in his expert opinion that the knife had been specifically modified for use as a stabbing instrument since the blade length did not match the handle.
>
> Based on the substantial evidence we have just recounted, a reasonable jury could find that the blade of defendant's knife was exposed and locked into position and therefore the knife qualified as a dirk or dagger. Accordingly, there was substantial evidence to support defendant's conviction.

(Opinion at 3-6.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[T]he dispositive question under Jackson is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" Chein v. Shumsky, 373 F.3d 978, 982 (9th Cir. 2004) (quoting Jackson, 443 U.S. at 318). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). In order to grant the writ, the federal habeas court must find that the decision of the state court

1  reflected an objectively unreasonable application of <u>Jackson</u> and <u>Winship</u> to the facts of the case.
2  <u>Id.</u> at 1275 & n.13.

3        The court must review the entire record when the sufficiency of the evidence is
4  challenged in habeas proceedings. <u>Adamson v. Ricketts</u>, 758 F.2d 441, 448 n.11 (9th Cir. 1985),
5  <u>vacated</u> <u>on</u> <u>other</u> <u>grounds</u>, 789 F.2d 722 (9th Cir. 1986) (en banc), <u>rev'd</u>, 483 U.S. 1 (1987).  It is
6  the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw
7  reasonable inferences from basic facts to ultimate facts." <u>Jackson</u>, 443 U.S. at 319.  If the trier of
8  fact could draw conflicting inferences from the evidence, the court in its review will assign the
9  inference that favors conviction. <u>McMillan v. Gomez</u>, 19 F.3d 465, 469 (9th Cir. 1994).
10 "Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction."
11 <u>United States v. Cordova Barajas</u>, 360 F.3d 1037, 1041 (9th Cir. 2004) (internal quotation marks,
12 brackets and citation omitted).  In addition, "the assessment of the credibility of witnesses is
13 generally beyond the scope of review." <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995); <u>accord</u>
14 <u>Sarausad</u>, 479 F.3d at 678 ("A jury's credibility determinations are entitled to near-total
15 deference[.]") (internal quotation marks and citation omitted).

16       The relevant inquiry is not whether the evidence excludes every hypothesis except
17 guilt, but whether the jury could reasonably arrive at its verdict. <u>United States v. Mares</u>, 940
18 F.2d 455, 458 (9th Cir. 1991).  Thus, "[t]he question is not whether we are personally convinced
19 beyond a reasonable doubt" but rather "whether rational jurors could reach the conclusion that
20 these jurors reached." <u>Roehler v. Borg</u>, 945 F.2d 303, 306 (9th Cir. 1991).  The federal habeas
21 court determines sufficiency of the evidence in reference to the substantive elements of the
22 criminal offense as defined by state law. <u>Jackson</u>, 443 U.S. at 324 n.16; <u>Chein</u>, 373 F.3d at 983.

23       Pursuant to California law,

24     Any person . . . who does . . . the following is punishable by
    imprisonment in a county jail not exceeding one year or in the state
25     prison:

                * * *
26 /////

> (4) Carries concealed upon his or her person any dirk or dagger.
>
> * * *
>
> (24) As used in this section, a "dirk" or "dagger" means a knife or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death. A nonlocking folding knife, a folding knife that is not prohibited by Section 653k, or a pocketknife is capable of ready use as a stabbing weapon that may inflict great bodily injury or death only if the blade of the knife is exposed and locked into position.

California Penal. Code § 12020(a)(4) & (c)(24). The dirk or dagger does not need to be totally hidden from view in order for it to be "concealed." People v. Fuentes, 64 Cal.App.3d 953, 955 (1976) ("The mere fact that some portion of the handle may have been visible makes it no less a concealed weapon. A defendant need not be totally successful in concealing a dirk to be guilty of [a] violation of Penal Code [§] 12020 subdivision (a).")

        Here, viewing the evidence in the light most favorable to the verdict, the undersigned concludes that there was sufficient evidence introduced at petitioner's trial from which a rational trier of fact could have found beyond a reasonable doubt that petitioner carried concealed upon his person a dirk or dagger. Officer Morehouse testified that he saw petitioner, seated on his motorcycle, lean forward causing the back of petitioner's leather motorcycle jacket to rise and exposing a "sheath in his right rear pocket." (RT at 41-43.) While petitioner was seated upright his jacket "completely covered his waist and partially covered his lower pockets." (Id. at 43.) Officer Morehouse testified that he had not previously seen the sheath due to the length of petitioner's motorcycle jacket and because the sheath was tucked into petitioner's right rear pant pocket, "which concealed it . . ." (Id.) The length of the jacket was such that the sheath would not have been visible even if petitioner were off his motorcycle and standing upright. (Id. at 62.)

        Found inside the sheath was a knife. (Id. at 45.) The knife's blade was eight inches long and protruded two inches beyond the blade's wooden handle. (Id.) It appeared that

the knife had been modified by attaching a blade longer than the knife's handle onto the knife and locking that blade in the closed position. (Id. at 48.) Officer Morehouse pulled on the blade as hard as he could but was unable to move it from the closed position. (Id. at 64.) In Officer Morehouse's opinion the knife's construction, specifically "being able to stab forward" without the blade opening, made the knife "a very efficient stabbing instrument." (Id. at 48.)

Based on this evidence, the state court's denial of relief with respect to petitioner's insufficient evidence claim is not an objectively unreasonable application of Jackson and Winship to the facts of the case. Accordingly, petitioner is not entitled to federal habeas relief on his claim that the evidence introduced at his trial was insufficient to support his conviction for violating California Penal Code § 12020(A)(4).

B. Cruel And Unusual Punishment

Petitioner next asserts that his sentence of two concurrent terms of 25-years to life in state prison "is so disproportionate" to the crimes of his conviction that "it constitutes cruel and unusual punishment under the Eighth Amendment to the United States Constitution . . ."[3] (First Am. Pet. at 4.)

The California Court of Appeal specifically rejected petitioner's argument that his sentence constituted cruel and unusual punishment under both the United States and California Constitutions. In this regard, the state appellate court reasoned as follows:

### A
### *Federal Constitution*

> The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment, but strict proportionality between crime and punishment is not required. "'Rather, [the Eighth Amendment] forbids only extreme sentences that are "grossly disproportionate" to the crime.'" (People v. Cartwright (1995) 39 Cal.App.4th 1123, 1135, quoting Harmelin v. Michigan (1991) 501 U.S. 957, 1001.)

---

[3] Petitioner also challenges his sentence under parallel provisions of the California Constitution, but this court may not review under 28 U.S.C. § 2254 such a claim based purely on an alleged violation of state law. Estelle, 502 U.S. at 67-68.

10

The Supreme Court of the United States has repeatedly upheld statutory schemes that result in life imprisonment for recidivists upon a third conviction for a nonviolent felony, considering the punishment of recidivism a legitimate penological goal. "[T]he State's interest is not merely punishing the offense of conviction.... '[I]t is in addition the interest ... in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society." (Ewing v. California (2003) 538 U.S. 11, 29, citing Rummel v. Estelle (1980) 445 U.S. 263, 276.) In Ewing, the defendant received a 25-years-to-life sentence for stealing three golf clubs valued at $399 each. (Ewing, at pp. 11, 20.) The sentence was enhanced because the defendant had prior burglary convictions and an armed robbery conviction. (Id. at pp. 18-20.)

Here, defendant has a long history of criminal activity, starting in 1989 when he was 21 with two first degree burglary convictions. In 1992, he was convicted again of first degree burglary. At the same time, he was also sentenced for possession of a controlled substance for sale. In 1994, he was convicted of being a felon in possession of a firearm and was placed on probation. He was then convicted of possession of less than one ounce of marijuana while driving in 2002, and in 2004 he was convicted of unlawful possession of a hypodermic needle or syringe. While on probation for this last offense, defendant committed the immediate offenses.

This record shows that defendant is a repeat offender and his recidivist nature along with his current convictions are sufficient to withstand defendant's challenge to his sentence under federal law. (Ewing v. California, supra, 538 U.S. at p. 29.)

## B
### *California Constitution*

"[I]n California a punishment may violate article I, section 6, of the Constitution if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (In re Lynch (1972) 8 Cal.3d 410, 424.) We consider three elements in assessing disproportionality: (1) an examination of the nature of the offense and the offender; (2) a comparison of the sentence with punishments for more serious offenses in the same jurisdiction; and (3) a comparison of the sentence with punishments for the same offense in other jurisdictions. (Id. at pp. 425-427.)

Addressing the first element of this analysis, "[i]n examining 'the nature of the offense and the offender,' we must consider not only the offense as defined by the Legislature but also 'the facts of the crime in question' (including its motive, its manner of commission, the extent of the defendant's involvement, and the consequences of

his acts); we must also consider the defendant's individual culpability in light of his age, prior criminality, personal characteristics, and state of mind." (People v. Crooks (1997) 55 Cal.App.4th 797, 806.)

Defendant's current convictions are for carrying a concealed dirk or dagger along with the transportation of a controlled substance. As we have already recounted, defendant has previous convictions for first degree burglary, a serious offense, and for other offenses, all beginning when he was 21 years old. "Under the three strikes law, defendants are punished not just for their current offense but for their recidivism. Recidivism in the commission of multiple felonies poses a danger to society justifying the imposition of longer sentences for subsequent offenses." (People v. Cooper (1996) 43 Cal.App.4th 815, 823-824, citing Rummel v. Estelle, supra, 445 U.S. at p. 284.) We find nothing that would compel the conclusion that defendant's sentence is so grossly disproportionate to the crimes he has committed as to shock the conscience and offend notions of human dignity. (See In re Lynch, supra, 8 Cal.3d at p. 424.)

The second element in the Lynch analysis requires that the court compare the challenged penalty with punishments for more serious offenses committed in the same jurisdiction. (In re Lynch, supra, 8 Cal.3d at p. 426.) Defendant argues that he received a sentence that was greater than that imposed for serious crimes such as sex crimes and violent offenses. While this statement is true, "it is [defendant's] recidivism in combination with his current crimes that places him under the three strikes law." (People v. Ayon (1996) 46 Cal.App.4th 385, 400, disapproved on another ground in People v. Deloza (1998) 18 Cal.4th 585, 600, fn. 10.) Since defendant's sentence is no more severe than that of many other defendants in California with a similar criminal history who are convicted of yet another felony, then it is not cruel and unusual under the California Constitution. (See People v. Meeks (2004) 123 Cal.App.4th 695, 710.)

Concerning the third element of the analysis, we must compare the punishment imposed with the punishment imposed for the same offense in other jurisdictions. (In re Lynch, supra, 8 Cal.3d at p. 427.) While California's sentencing scheme is one of the most severe recidivist schemes in the nation, this fact does not render it unconstitutional. "This state constitutional consideration does not require California to march in lockstep with other states in fashioning a penal code ... [o]therwise, California could never take the toughest stance against repeat offenders or any other type of criminal conduct." (People v. Martinez (1999) 71 Cal.App.4th 1502, 1516.)

For the reasons stated above, we conclude that defendant's sentence does not violate the proscription against cruel and unusual

punishment set forth in the California Constitution, article I, section 17.

Opinion at 7-11.

The United States Supreme Court has stated that in addressing an Eighth Amendment challenge to a prison sentence, the "only relevant clearly established law amenable to the [AEDPA] framework is the gross disproportionality principle, the precise contours of which are unclear and applicable only in the 'exceedingly rare' and 'extreme' case." Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (citing Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 290 (1983); and Rummel v. Estelle, 445 U.S. 263, 272 (1980)). In Andrade, the Supreme Court concluded that two consecutive twenty-five years to life sentences with the possibility of parole, imposed in that case under California's Three Strikes Law following two felony convictions for petty theft with a prior, did not amount to cruel and unusual punishment. 538 U.S. at 77; see also Ewing v. California, 538 U.S. 11 (2003) (holding that a sentence of twenty-five years to life imposed for felony grand theft under California's Three Strikes law did not violate the Eighth Amendment).

Following the decision in Andrade the United States Court of Appeals for the Ninth Circuit has held that a sentence of twenty-five years to life in prison for a third shoplifting offense, a "wobbler" under state law[4], constituted cruel and unusual punishment. Ramirez v. Castro, 365 F.3d 755 (9th Cir. 2004). In so holding, the court in Ramirez relied upon the limited and non-violent nature of the petitioner's prior criminal history and the fact that the petitioner's only prior period of incarceration had been a single one-year jail sentence. Id. at 768-69. Thereafter, in Rios v. Garcia, 390 F.3d 1082 (9th Cir. 2004), the Ninth Circuit distinguished the holding in Ramirez from the situation it confronted, finding that the petitioner in Rios had a

---

[4] A "wobbler" is an offense that can be punished as either a misdemeanor or a felony under applicable state law. See Ferreira v. Ashcroft, 382 F.3d 1045, 1051 (9th Cir. 2004).

1  "lengthy criminal history," had "been incarcerated several times," and that the prior strikes used
2  to enhance his sentence had "involved the threat of violence." Id. at 1086.

3          This court finds that the sentence imposed upon petitioner in this case, while
4  undeniably extremely harsh, does not fall within the type of "exceedingly rare" circumstance that
5  would support a finding that his sentence violates the Eighth Amendment.  In connection with
6  the state court judgment under attack, petitioner was convicted of felony transportation of a
7  controlled substance and the carrying of a concealed dirk or dagger, also a felony.  In view of the
8  decisions noted above, the court cannot conclude that petitioner's sentence is grossly
9  disproportionate to those crimes.  See Harmelin, 501 U.S. at 1004-05 (life imprisonment without
10 possibility of parole for possession of 24 ounces of cocaine raises no inference of gross
11 disproportionality).  Moreover, petitioner has an extensive criminal record, which includes three
12 prior felony convictions for first degree burglary, possession of a controlled substance for sale,
13 and being a felon in possession of a firearm.  Under these circumstances, the state court's
14 rejection of petitioner's Eighth Amendment claim was neither contrary to, nor an unreasonable
15 application of clearly established federal law.  Therefore, petitioner is not entitled to relief on his
16 Eighth Amendment claim.

## CONCLUSION

18         Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for
19 a writ of habeas corpus (Doc. No. 7) be denied.

20         These findings and recommendations are submitted to the United States District
21 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-
22 one days after being served with these findings and recommendations, any party may file written
23 objections with the court and serve a copy on all parties.  Such a document should be captioned
24 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
25 shall be served and filed within seven days after service of the objections.  Failure to file
26 objections within the specified time may waive the right to appeal the District Court's order.

1 Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file to these findings and recommendations petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. See Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: May 26, 2010.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:6
burk1916.hc